UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JAUSTRAUB,<br><br>　　　　Petitioner,<br><br>　v.<br><br>SCOTT FRAUENHEIM,<br><br>　　　　Respondent.[1] | No. 2:13-cv-1036 JAM GGH<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATRIONS |

*Introduction and Summary*

As set forth by the Court of Appeal:

> [Petitioner] was charged with second degree murder, two counts of driving under the influence causing injury, unlawful possession of methamphetamine, unlawful possession of clonazepam, being under the influence of methamphetamine, possession of clonazepam pills without a prescription, possession of drug paraphernalia, driving without a valid license, driving without insurance, and leaving the scene of an accident. It was further alleged that, with respect to the murder and driving under the influence, defendant personally inflicted great bodily injury, and had a prior serious felony conviction, a strike.
>
> A jury found defendant guilty of all charges and found the special allegations true with the exception of two of the personal infliction

---

[1] It appears that petitioner has transferred prisons, and that the above named person is the warden of the prison at which plaintiff currently resides.

> of great bodily injury allegations. The trial court found the prior strike allegation true.
>
> The trial court sentenced defendant to state prison for an indeterminate term of 30 years to life, plus a consecutive determinate term of 11 years and 4 months, imposed specified fees and fines….

People v. Jaustrab, 2012 WL 1353554 *2 (Cal. App. 2012).

*Issues*

Petitioner filed a federal petition listing numerous claims; however, the rendition of the issues in the petition is unnecessarily confusing. The federal petition lists as issues:

1. Federal Constitutional error, Prejudicial Error, and under supporting facts "Following in it's entirety. Table of Contents (A) A1-A23."

2. Petitione[r] is innocent of the crimes against him, and under supporting facts: "Following table of contents A, will be table of contents B following the federal Constitutional error A-A23."

3. I.A.C. attorney refused to recall Destiny Estrada in my defence (sic) (supporting fact given)

4. Trial court denied Marsden motion, and in supporting facts: "outlined in table of contents B as ground 8. All grounds 1-8 in Table of Contents B."

Respondent interpreted these vague statements as incorporating the eight issues raised in each state habeas motion—Superior Court, Court of Appeal, and Supreme Court. The traverse, evidently written by a person other than petitioner, adopted this delineation of issues.[2] This had the effect, however, of abandoning the admission of prejudicial evidence issue raised on direct appeal and on petition for review before the California Supreme Court.

---

[2] The claims were:
1. Actual innocence;
2. Failure to investigate/call Witnesses;
3. Failure to appoint new counsel;
4. Failure to preserve evidence (petitioner's car);
5. Witness coercion/jury misconduct;
6. Vindictive prosecution;
7. Ineffective assistance of appellate counsel;
8. Cumulative error

However, in the traverse, petitioner conceded that all but two of the eight issues should be dismissed because of procedural default. See Traverse at 1-2, para 8 withdrawing claims.[3] Thus, only two claims were discussed on the merits.

After the traverse was filed, the Ninth Circuit eviscerated the basis of the procedural default, the Dixon bar, i.e., one cannot raise in state habeas corpus issues which should have been raised on direct review. Lee v. Jacquez, 788 F.3d 1124 (9th Cir 2015). Although not banning the use of this procedural default *per se*, the opinion leaves little doubt that the Dixon procedural default is completely ineffectual in federal habeas-- absent a statistical analysis of enormous time and expense (a case-by-case analysis for a set of thousands of state habeas cases when the bar should have been utilized by the state courts, but was not, and then compared to cases in which the bar was utilized), or some other undefined, non-statistical analysis or event which the undersigned cannot conceive of at the present time.

If the undersigned allowed petitioner's concession in the traverse to stand, it was predictable that the case would be inevitably returned for review on the merits of the claims abandoned by the traverse's ill advised concession. Rather than waste that time, the undersigned ordered that petitioner be given an opportunity to respond on the merits in a supplemental traverse. The order provided:

>  1. If Petitioner desires to file a supplemental traverse, such shall be filed within thirty days;
>
>  2. The supplemental travers shall include a discussion of *every* claim on the merits which petitioner desires to have reviewed on the merits; each claim shall be singularly listed in a heading along with a following discussion of that issue;
>
>  3. Petitioner *shall not incorporate by reference* any discussion in any previous document concerning any issue; that is, the traverse shall be inclusive in itself of a discussion of all claims;
>
>  4. After receipt of the traverse, the court will determine whether, in fairness, respondent need make any further elaboration of his discussion of the issues on the merits; respondent may advise

---

[3] Petitioner concluded that the claims should be dismissed without prejudice. However, because a successive petition would almost always be barred, the effective result is that the claims are dismissed—period—whether with or without prejudice.

> the court of any desire for further response within 10 days after the traverse is filed.

(ECF No. 32 at 3.)

Petitioner did file a supplemental traverse in which he now formally abandoned previous Claims I, III, V, VII, VIII, and IX. Whatever the state and rendition of previous claims II, IV, and VI, the undersigned made it crystal clear in the above referenced order that the claims listed, and the discussion made, for each such claim *in the supplemental traverse* would be the *only* claims adjudicated in this petition. Thus the claims upon which this petition will be adjudicated are as set forth in the Supplemental Traverse, and only that document:

1. Ineffective Assistance of Counsel-failure to investigate and produce evidence that petitioner was being chased by a gun wielding assailant;

2. Destruction of Exculpatory Evidence (petitioner's truck);

3. Ineffective Assistance of Counsel—failure to move to suppress drug evidence found in car that was "planted" in petitioner's car.

*Background Facts*

> At approximately 3:00 p.m. on May 15, 2008, defendant ran a red light at the intersection of Florin Road and South Land Park Drive. He collided with and seriously damaged a vehicle driven by Tim Nguyen. Defendant sped away from the scene of the collision, leaving his bumper underneath the other vehicle. Nguyen noticed defendant's face looked "droopy" and a little bit "sleepy." Nguyen's passenger, Danh Truong, said defendant "looked dazed and confused" just prior to the collision.
>
> Shortly thereafter, defendant returned to the scene of the collision, swerving, driving up onto the sidewalk at times, and nearly colliding with another vehicle before driving away again.
>
> Witnesses Jessica Sayler and Cory Fukuoka saw defendant leave the accident scene, return minutes later driving erratically, then leave a second time. Sayler told investigators defendant had a "wild" or "crazy" facial expression and looked like he was "hopped up" on something. Fukuoka said defendant "looked like he was tweaking, like he was on drugs." Fukuoka followed defendant's truck as it headed onto the freeway on-ramp, but stopped his pursuit when defendant slammed on his brakes, made a U-turn, and drove up the grassy hill back toward Florin Road.
>
> Around that time, Janell Cummings was driving home on Florin Road after picking up her niece, Maleka, and a friend, Destiny

> Estrada, from school. Both girls sat in the backseat of Cummings's car. As Cummings pulled into the left-hand turn lane, defendant's pickup truck collided with hers, forcing her car into the path of an oncoming car driven by Roberto Comparan. Comparan was unable to stop and crashed into Cummings's car. Cummings later died as a result of the collision. Maleka suffered a broken jaw and a facial laceration that left her with a permanent scar. Estrada suffered minor injuries.
>
> Police searched defendant's truck and found 36 tablets of carisoprodol, one clonazepam tablet, .05 grams of methamphetamine, drug paraphernalia, and a prescription bottle bearing a name other than defendant's. Defendant initially denied being under the influence of drugs, but later told police his blood test would likely show methamphetamine and heroin in his system and admitted having taken those drugs around noon that day.[FN1]
>
> FN1. Defendant's blood and urine tested positive for methamphetamine, methadone, diazepam, cocaine, and meprobamate.

People v. Jaustrab, 2012 WL 1353554, *1-2 (Cal. App. 2012).

*AEDPA Standards*

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013) (citing Greene v. Fisher, ⎯⎯ U.S. ⎯⎯ –, ⎯⎯⎯, 132 S.Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.2011) (citing Williams v. Taylor, 529 U.S. 362, 405–06, 120 S.Ct. 1495 (2000)). Circuit precedent may not be

"used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, ––– U.S. ––––, ––––, 133 S.Ct. 1446, 1450 (2013) (citing Parker v. Matthews, ––– U.S. ––––, ––––, 132 S.Ct. 2148, 2155 (2012)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640, 123 S.Ct. 1848 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4] Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir.2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.' "). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

---

[4] The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir.2004)). It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004)).[5] Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ––– U.S. –––– –, ––––, 133 S.Ct. 1088, 1091 (2013).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

---

[5] "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, 562 U.S. at 101, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495 (2000).

1   F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003).

2   The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir.2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 786. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166 (2003).

////

////

8

The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir.2013) (quoting Harrington, 562 U.S. at 98).

*Discussion*

> A. <u>Failure to Investigate/Call/Interrogate Witnesses, or Otherwise Present Evidence, Who/Which Would Have Shown That Petitioner Was Attempting to Escape From a Gun-Wielding Accident Victim, and Who Subsequently Caused Petitioner to Lose Control, Thereby Causing Petitioner's Truck to Strike the Decedent's Car</u>

Petitioner's defense at trial, presented in part by an accident reconstruction expert, was that the second truck to hit the decedent's vehicle was *the* cause of the fatality in that the second truck, driven by Roberto Comparan, (the Black Silverado), who himself may have been intoxicated, could have avoided the second collision with due care.[6] According to petitioner, a witness to petitioner's first collision, Fukuoka, who petitioner now describes as the person he first collided with, brandished a gun at petitioner and precipitated a road-rage chase of petitioner's truck; Fukuoka rammed into petitioner's truck causing petitioner to lose control, but *then* Fukuoka was the *first* to run into the decedent's car. Not only is this version of events highly improbable, or impossible from a physics standpoint, it also depends on isolated portions of the record chosen by petitioner, and/or outright conclusions with no factual support whatsoever.[7]

////

---

[6] Petitioner's other primary defense was that the facts of the case did not justify finding the required malice for second degree murder.

[7] Petitioner asserts that Fukuoka's vehicle (sometimes referred to as a white SUV or truck with a camper, rammed his truck from the rear, causing petitioner's truck to cross the center median. Supp. Traverse, Fact 21. However, petitioner also asserts that Fukuoka's truck was the first to hit the decedent's car, somehow (unexplainably) getting ahead of petitioner's truck on the median. Supp. Traverse at 5-6. There is no physical evidence that Fukuoka's vehicle ever hit the decedent's car. It is much more likely, as found by the Court of Appeal, that petitioner's truck was the first to hit the decedent's car as petitioner, on his own, attempted to cross the center median.

Petitioner also asserts in the supplemental traverse that petitioner hit Fukuoka's vehicle, precipitating the gun brandishing and subsequent car chase. Supp. Traverse, Fact 14. However, as found by the Court of Appeal, Fukuoka was a come-to-the-scene *witness* to petitioner's initial accident involving a person named Nguyen. It was only when petitioner re-arrived at the scene, and then left again, did Fukuoka follow petitioner's truck, aka, the "chase."

1    As such, petitioner's ineffective assistance claim has morphed from the claim presented in the state courts—counsel was ineffective for failure to present evidence from three specific witnesses; see Lodged Document No. 9, Superior Court Order at 3; to a generalized claim that trial counsel did not present evidence to support what petitioner *now* asserts was his all-around best defense.  However, petitioner's present claim, although he does not specifically so state, rests in the main on what petitioner now asserts what *he* could have testified to in support of this defense, e.g, ----he got into an automobile accident with Fukuoka (no record evidence of this); then Fukuoka brandished a gun at him (no record evidence of this); petitioner took off  in his vehicle fearing for his life (no record evidence of petitioner's state of mind); he was chased by Fukuoka in his vehicle for ten miles; Fukuoka rammed petitioner's truck causing it to go out of control (no record evidence of this).  Petitioner previously raised an ineffective assistance of appellate counsel claim for failing to appeal on an insufficient evidence theory, but this claim can only be based on the record, not on what petitioner now claims could have been presented at trial. Petitioner has not only abandoned that insufficiency claim herein, he has also abandoned any actual innocence claim.

To the extent that petitioner faults his counsel for failure to elicit his testimony, petitioner raises a separate claim involving his right to testify that was never expressly made to the state courts. The claim has not been exhausted, and will not be reviewed here.[8]  Petitioner's backdoor testimony will not be considered.

This brings the discussion to the witnesses petitioner contends his counsel did not exploit to his advantage.  The only viable claim, since all three witnesses petitioner claims would have shown reasonable doubt, actually testified at trial, and whose pretrial statements were available to

////

---

[8] Moreover, petitioner has not even stated an ineffective assistance claim for "failure to testify." Petitioner must show both that his counsel prevented him from testifying, he was unaware of his right to overrule his counsel and prejudice therefor.  See United States v Pino-Noriega, 189 F.3d 1089, 1094-95 (9th Cir. 1999); United States v. Edwards, 897 F.2d 445 (9th Cir. 1989).  In this case the record is clear that counsel and petitioner discussed whether petitioner should testify, and petitioner waived that right. RT 1815, 2458.  It was only after the defense had initially rested and the case went into rebuttal and sur-rebuttal that petitioner expressed any belated desire to testify.

defense counsel, is that counsel failed to elicit the purported exonerating facts.[9]

Petitioner's burden to demonstrate ineffective assistance of counsel in this respect is very high indeed:

> There is no dispute that the clearly established federal law here is *Strickland v. Washington*. In *Strickland*, this Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation ... [but] simply to ensure that criminal defendants receive a fair trial." 466 U.S., at 689, 104 S.Ct. 2052. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, at 686, 104 S.Ct. 2052 (emphasis added). The Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.*, at 689, 104 S.Ct. 2052.
>
> Recognizing the "tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence," ibid., the Court established that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *id.*, at 690, 104 S.Ct. 2052. To overcome that presumption, a defendant must show that counsel failed to act "reasonabl[y] considering all the circumstances." *Id.*, at 688, 104 S.Ct. 2052. The Court cautioned that "[t]he availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges." *Id.*, at 690, 104 S.Ct. 2052.
>
> The Court also required that defendants prove prejudice. *Id.*, at 691–692, 104 S.Ct. 2052. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.* That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ——, 131 S.Ct., at 791.

---

[9] Petitioner also references a witness, Makela Cummings, who he says counsel should have called. This witness did testify at trial. The supplemental traverse is devoid of what this witness would have said at trial in terms of any information helpful to petitioner. Indeed, in all of petitioner's exhibits set forth in the initial petition, there is only one statement given by Makela Cummings in which she stated: "I didn't see the car that hit us because…." ECF #1 at electronic pagination 137. Cummings repeated at trial that she had her eyes closed prior to the first impact. RT 1210 et seq. She testified forcefully about her injuries. Defense counsel wisely refrained from cross-examination.

> Our review of the California Supreme Court's decision is thus "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. ——, ——, 129 S.Ct. 1411, 1413, 173 L.Ed.2d 251 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) ). We take a "highly deferential" look at counsel's performance, *Strickland*, supra, at 689, 104 S.Ct. 2052, through the "deferential lens of § 2254(d)," *Mirzayance*, *supra*, at ——, n. 2, 129 S.Ct., at 1419, n. 2. Pinholster must demonstrate that it was necessarily unreasonable for the California Supreme Court to conclude: (1) that he had not overcome the strong presumption of competence; and (2) that he had failed to undermine confidence in the jury's sentence of death.

Cullen v. Pinholster, 563 U.S. 170, 189 (2011).

The first witness is Destiny Estrada. Ms. Estrada, 12 or 13 years old at the time of the accident, was a passenger in decedent's vehicle. As petitioner points out (contrary to all the accident reconstructionists, the other witnesses, as well as the factual possibilities/improbabilities, see footnote 7), she had identified Fukuoka's truck[10] as the first vehicle to strike the decedent's vehicle in pretrial statements. However, her pretrial statements, attached to petitioner's pleadings herein, were very uncertain. She again stated at trial that she "believed" the first car to hit the decedent's was a white truck with a cab (Fukuoka's), RT 1242, but she identified the driver of that car who she saw briefly before impact, in court, *as petitioner*. RT 1246-47. Cross-examination by defense counsel emphasized the white truck hitting first (but not the identification of petitioner). It is difficult to understand petitioner's current argument that counsel did not elicit the "favorable" facts from this witness, or what more could have been done by defense counsel.

Danh Truong was a passenger in the car which was first hit by petitioner in his crash spree. RT 771-772. He described petitioner as the driver of the blue truck which struck the vehicle he was riding in, RT 774-75, and identified petitioner in court as the driver. RT 781. Troung testified that at the time of the accident, and despite a pretrial statement to the contrary, petitioner was not being chased by another car (presumably Fukuoka's truck). RT 787, 790, 811. Petitioner then fled. RT 815. Petitioner later drove back to the scene, RT 818, drove up on a sidewalk and left again. RT 822-23. Fukuoka's vehicle had stopped at the scene of the accident. RT 821-22. There was no damage to the white SUV type car (truck). RT 822.

---

[10] Again, sometimes referenced as an SUV in the testimony.

12

1     Defense counsel did what she could to utilize Troung's prior statement regarding the
2 white SUV (truck) having been chasing petitioner's truck from a previous accident. However, the
3 witness said that he was just repeating what had been told to him by another, and he repeatedly
4 disclaimed at trial seeing any chase scene. Again, petitioner is grasping at straws in claiming that
5 defense counsel was ineffective in attempting to elicit favorable facts.

6     Finally, Mr. Velazquez-Comparan (Velazquez in the transcript, but Comparan in the
7 Court of Appeal opinion) was the driver of the Silverado truck which had struck the decedent's
8 car subsequent to petitioner's car striking it and spinning it. Velazquez testified at several points
9 that petitioner's car was proceeding fast and erratically. Petitioner's defense at trial was that the
10 Velazquez (Silverado) impact was an intervening cause which resulted in the death. Velazquez
11 testified that a blue truck (petitioner's) first struck the decedent's car. RT 1177-1179. The
12 decedent's car was then turned and the Silverado struck it. Velazquez saw no other vehicles
13 involved in the crash. RT 1185. Defense counsel did her best to set up the potential defense that
14 the Silverado was speeding.

15     Petitioner brings forth no facts that defense counsel did not seek to elicit facts favorable to
16 the defense. That petitioner would have liked Velazquez to have testified to other facts does not
17 render defense counsel ineffective. She had to make the best of Velazquez's actual testimony.

18     The claim that defense counsel was ineffective in that she did not investigate/produce
19 facts favorable to the defense—facts which were otherwise available—is devoid of merit and
20 should be denied.

21     B.   <u>Destruction of Evidence (Petitioner's Truck)</u>

22     Petitioner believes that the destruction of his truck prior to trial precluded the introduction
23 of favorable evidence. However, petitioner provides nothing but his speculation that favorable
24 evidence existed on his truck, e.g., allegedly--white paint marks derived from Fukuoka's white
25 truck demonstrating that he had indeed collided with Fukuoka before the collision with the
26 decedent's vehicle; this evidence would have led to an argument that he had indeed been chased
27 by Fukouka. However, all petitioner can posit as facts is that such evidence *might* have been on
28 the destroyed truck. He does not present evidence that the police knew his truck (actually his

13

father's truck) contained material evidence when they permitted it to be destroyed.

In order for the destruction of evidence to be a cognizable federal claim, the evidence must have been destroyed in bad faith, and also be "potentially useful" to the outcome of the case. Arizona v, Youngblood, 488 U.S. 51 (1988). See also Illinois v. Fisher, 540 U.S. 544, 548 (2004). "Bad faith requires more than mere negligence or recklessness." United States v. Flyer, 633 F.3d 911, 916 (9th Cir. 2011). Rather, the government agents must know that the evidence is potentially useful to the defendant, and it is intentionally destroyed nonetheless. United States v. Vera, 231 F. Supp. 2d 997, 1000 (D. Or. 2001). Because petitioner has not demonstrated "potential usefulness," aside from his speculation, and has not put forth even a colorable evidentiary showing of bad faith, the claim should be denied.

    C.   Ineffective Assistance of Counsel--Fabricated Evidence

Petitioner's final claim is an "evidence plant" assertion. In addition to second degree murder (the major charge), petitioner was also convicted of a felony methamphetamine possession, a prescription drug misdemeanor, and a drug paraphernalia misdemeanor. Petitioner claims all of the drugs and drug equipment were planted by police officer(s), especially Officer Phipps, at the time a search was performed at the tow yard where petitioner's truck (actually owned by petitioner's father) had been taken. Despite his uncontested drug intoxication at the time of the accident, petitioner asserts that a "plant" must have occurred because his car was searched on the day of the accident, and no drugs were found, *but* were purportedly in plain view at the tow yard. More will be said about these factual assertions below.

There is no dispute that an evidence plant constitutes the violation of federal constitutional rights. The courts view such a claim as being well encompassed by the knowing submission of false or perjured evidence as the planted evidence is admitted in court with testimony attesting to its bona fides. See Devereaux v. Abbey, 263 F.3d 1070, 1075 (9th Cir. 2001) (en banc) citing the false evidence case of Pyle v. Kansas, 317 U.S. 213 (1942). If counsel fails to develop a colorable, material evidence fabrication claim, counsel might well be ineffective.

The same claim with the same factual assertions was made to the Superior Court which denied the claim with a reasoned decision:

> Petitioner claims that the prosecutor engaged in vindictive prosecution when it charged additional narcotics violations based on controlled substances located in his vehicle. Although Petitioner denominates this a claim of vindictive prosecution, it is apparent that such claim is without merit. There is no evidence that the prosecutor "increased" the narcotics charges as those were all charged in the original complaint. Certainly, Petitioner has not shown that the charges were filed in response to Petitioner's exercise of any right. Instead, it appears that Petitioner claims that the charges were fraudulent and manufactured, presumably by law enforcement. Such claim should have been raised at trial. To the extent it was not, Petitioner's (sic) appears to claim that trial counsel was ineffective. In particular, Petitioner claims that nine days after the collision, California Highway Patrol Detective Phipps inspected Petitioner's vehicle and found various narcotics in plain view.
> Petitioner claims that it was not possible that the narcotics were previously overlooked and that no one else had reported that narcotics were in the vehicle prior to Detective Phipps's examination. First, Petitioner does not provide any evidence of who examined his vehicle: mere presence at the scene of the collision is not evidence that anyone examined the vehicle. Second, even if others had examined the vehicle in the immediate aftermath of a fatal collision, he has not shown that they should or would have reported finding narcotics given that many of those claimed to have examined his vehicle were fire personnel and that an impounded vehicle could have been searched at a later time.

Lodged Document 9 (Superior Court Order at 2-3).

This claim is brought on ineffective assistance of counsel grounds in that petitioner believes his counsel should have moved to suppress the evidence of drugs etc. found in the car. Without citation to the trial record, petitioner proclaims that Officer Phipps "searched" the vehicle at the collision scene finding nothing, which rendered the later finding of drugs in plain view extraordinarily suspicious. However, the Superior Court was not unreasonable in its finding that Officer Phipps, or anyone for that matter, "searched" the vehicle at the scene as that term is used in legal proceedings. Indeed, the record is to the opposite in that Officer Phipps logically testified that only the most cursory examination of the strewn contents of papers and other items was made at this difficult time to extract any items of value, e.g., petitioner's wallet, before the vehicle was towed.[11]

---

[11] Officer Phipps, as the first responding officer, was dealing with a critically injured driver of the Toyota, other seriously injured people including petitioner, debris in the roadway, temporary detention of witnesses and traffic control/closure due to traffic problems.

1        [Testimony of Officer Phipps]
2        Q. At the scene you requested the Mazda [petitioner's truck] be impounded; is that right?
3        A. Yes, ma'am.
4        Q. And that's taken to a lot where it's secured behind gates so that you could go later and
5    inspect and further search the vehicle.
6        A. Yes, ma'am.
7        Q. Did you have a chance—once [petitioner] was removed from that vehicle, did you have
8    chance at the scene to look inside the vehicle and assess the condition of the interior of that truck?
9        A. Yes, ma'am.
10        Q. And it looked pretty junkie inside, didn't it?
11        A. Yes, ma'am.
12        Q. Lots of trash, lots of items, whatever?
13        A. Yes, ma'am.
14        Q. You just looked—did you inventory any property inside?
15        A. I believe Officer Klieve filled that inventory out.
16        Q. And was that at the scene?
17        A. Yes.
18        Q. Okay
19                                          ***
20        Q. And so would he have searched through – you said that there was like a bunch of stuff
21    on the floorboard, a lot of items on the floorboard?
22        Do you know whether or not he searched through those items to document each and every
23    one of them or if he—what did he do—or, what is your standard operating procedure in that
24    respect?
25        A. In this instance, it's because we know that the evidentiary value of that truck, we can
26    keep that. It's not going to go anywhere. It's not the highest priority thing, like a witness
27    statement or like tire friction marks. We want to preserve those. So since we knew that was
28    going to a secure location, we would just document the overall condition of the truck, any

16

1    obvious items of value, and those sorts of things.

2        Q. And did he, during that inspection at the scene, indicate to you or call your attention to

3    any of these little white pills that you saw all over the floorboard?

4        A. No, ma'am.

5        Q. Did you request that—is part of the impound purpose so that you can or your—your

6    department could do a mechanical inspection of the truck?

7        A. Yes, ma'am.

8    RT 1737-1739.[12]

9        Reasonable counsel upon hearing such evidence, and the logic behind it, would not have

10   believed that any fraudulent planting of evidence was afoot because the entire mess in the car,

11   including pills which could have been aspirin, Tylenol and the like, were not immediately

12   documented on the scene.  The undersigned adds that reasonable counsel would also believe that

13   the towing of the car could well shift individual items around upon lifting the truck for tow and

14   on the trip to the secure impound yard.  Pills which were not so evident at the scene might well

15   have shifted to become evident.

16       On the record before the Superior Court, and the same record before this court, the

17   undersigned will not find that the fact finding of the Superior Court was unreasonable.  Certainly,

18   petitioner has not demonstrated through clear and convincing evidence that such is the case.

19   Therefore, petitioner is entitled to no evidentiary hearing on this issue.  Hibbler v. Benedetti, 693

20   F.3d 1140, 1146-1148 (9th Cir. 2012).  Because the first prong of the Strickland analysis cannot

21   be met, i.e., the actions of counsel were objectively reasonable, the claim should be denied.

22   *Conclusion*

23       IT IS HEREBY ORDERED that no evidentiary hearing shall be held in this case.

24   ////

25   ////

---

[12] Petitioner would have nothing to add to this evidence in that he was initially injured and incoherent in his car, RT 1719, and soon thereafter transported to the ambulance. There are, of course, no direct admissions of evidence tampering, or witnesses that saw such, or photographs/other recordations which would indicate such with any clarity.

1    IT IS HEREBY RECOMMENDED that the three claims raised by petitioner have no
2 merit, and the petition should be denied. It is further recommended that no certificate of
3 appealability be issued in this case.
4    These findings and recommendations are submitted to the United States District Judge
5 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days
6 after being served with these findings and recommendations, any party may file written
7 objections with the court. The document should be captioned "Objections to Magistrate Judge's
8 Findings and Recommendations." Any response to the objections shall be filed and served within
9 fourteen days after service of the objections. Failure to file objections within the specified time
10 may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th
11 Cir. 1991).
12 Dated: February 29, 2016

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE